1998 ME 273

**STATE of Maine**

v.

**David A. LEAR.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 6, 1998.
Decided Dec. 22, 1998.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

Joseph M. Baldacci, Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] David A. Lear appeals from the judgment entered in the Superior Court (Penobscot County, *Kravchuk, C.J.*) affirming the judgment entered in the District Court (Bangor, *Hjelm, J.*) after a conditional guilty plea on the charge of operating under the influence, in violation of 29–A M.R.S.A. § 2411

(1996 & Supp.1998),[1] a Class D offense. Lear contends that the court (Bangor, *Anderson, J.*) erred in denying his motion to suppress. We disagree and affirm the judgment.

[¶ 2] On the evening of November 30, 1996, Trooper Brian Strout of the Maine State Police participated in a roadblock on Route 1A in East Holden. At approximately 11:30 p.m., Strout saw Lear's approaching motor vehicle safely make a U-turn and reverse direction approximately 200 yards from the roadblock. Strout got into his cruiser and pursued the vehicle. After continuing about one half mile on Route 1A, the vehicle turned left on Church Road, and progressed for about one quarter mile before turning onto Roques Bluff Road and immediately into Lear's driveway. Strout displayed his blue lights and flashers during the entire distance he pursued Lear's vehicle. Strout caught up with the vehicle for a portion of the distance, but the vehicle did not promptly stop, despite the trooper's signal to do so.

[¶ 3] As Lear and a female passenger walked toward Lear's house, Strout intercepted them and asked Lear to produce his operator's license. Lear produced a conditional license prohibiting him from operating a motor vehicle after consuming any amount of intoxicating liquor. Strout smelled an odor of alcohol emanating from Lear and observed that Lear had glassy eyes and slurred speech. He then ordered Lear to get into his police cruiser and asked Lear if he would submit to a test to determine his blood alcohol level. Lear responded: "I'm f——ed if I do and I'm f——ed if I don't."

[¶ 4] Lear pled not guilty to the Class D offense of operating under the influence in violation of 29–A M.R.S.A. § 2411, and filed a motion to suppress based upon an allegedly improper investigatory stop and failure to administer *Miranda* [2] warnings. The motion court concluded that "Officer Strout did not have a reasonable articulable suspicion justifying the stop of [Lear's] vehicle based solely on his making a U-turn 200 yards from the roadblock." However, the court found that Strout: (1) was justified in stopping Lear based upon a reasonable articulable suspicion that Lear violated 29–A M.R.S.A. § 2414 (1996) [3] by refusing to stop for a law enforcement officer; and (2) was not conducting an interrogation at the time Lear made the statement at issue. The court also concluded that Strout had probable cause to arrest Lear based on a reasonable belief that Lear had violated both 29–A M.R.S.A. § 2414 and the terms of his conditional license. Lear appealed to the Superior Court, which affirmed the judgment of the District Court, and now appeals to this court.

I.

[¶ 5] An officer is justified in making an investigatory stop if, at the time of the stop: (1) the officer has an "articulable suspicion" of criminal activity; and (2) such suspicion is "objectively reasonable in the totality of the circumstances." *State v. Brown*, 1997 ME 90, ¶ 5, 694 A.2d 453, 455 (quotations omitted). "The court must find that the officer *actually* entertained the suspicion and

---

1. Section 2411 of Title 29–A provides, in pertinent part:

    **§ 2411. Criminal OUI**

    **1. Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:

    A. While under the influence of intoxicants; or

    B. While having a blood-alcohol level of 0.08% or more.

    . . . .

    29–A M.R.S.A. § 2411(1) (1996 & Supp.1998).

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Section 2414 of Title 29–A provides, in pertinent part:

    **§ 2414. Refusing to stop for a law enforcement officer**

    **1. Definitions.** As used in this section, unless the context otherwise indicates, the following terms have the following meanings.

    A. "Roadblock" means a vehicle, a physical barrier or other obstruction placed on a way at the direction of a law enforcement officer.

    B. "Signal" includes, but is not limited to, the use of a hand signal, siren or flashing emergency lights.

    **2. Failure to stop.** A person commits a Class E crime if that person fails or refuses to stop a motor vehicle on request or signal of a uniformed law enforcement officer.

    . . . .

    29–A M.R.S.A. § 2414 (1996).

that the suspicion was *reasonable* under the circumstances." *State v. Dean*, 645 A.2d 634, 635 (Me.1994) (quoting *State v. Worster*, 611 A.2d 979, 980 (Me.1992)) (emphasis added). Therefore, an analysis of the propriety of an investigatory detention short of formal arrest necessarily involves both a subjective component (*i.e.*, actual articulable suspicion) and an objective component (*i.e.*, reasonable suspicion). *See id.* Hence, the term "reasonable and articulable suspicion" includes both subjective and objective components. *See id.*

■ [¶ 6] We review both the subjective and objective components of a trial court's finding that an officer possessed the "reasonable and articulable suspicion" necessary to support an investigatory detention of a motor vehicle under a "clear error" standard. *See Brown*, 1997 ME 90, ¶ 5, 694 A.2d at 455. Lear does not contest the court's factual finding that Strout actually had a *subjective* "articulable suspicion" of criminal activity.[4] Rather, he contends that Strout's articulable suspicion of criminal activity was *objectively* unreasonable, based on the undisputed facts. Therefore, the only issue is whether the court committed clear error when it found that Strout's suspicion of criminal activity was objectively reasonable.

■ [¶ 7] The court found that Strout's suspicion of criminal activity based solely on Lear's U-turn was not objectively reasonable. However, the court concluded that Lear's intervening failure to stop independently provided Strout with an objectively reasonable suspicion of criminal activity, because 29–A M.R.S.A. § 2414 prohibits a person from failing or refusing to stop a motor vehicle "on request or signal of a uniformed law enforce-

ment officer." 29–A M.R.S.A. § 2414. Lear does not contest the court's finding that Strout caught up with Lear during Lear's retreat from the roadblock and that Lear "did not promptly stop, despite the trooper's signal to do so."[5] By failing to stop for a police officer, Lear violated 29–A M.R.S.A. § 2414 (a class E crime), and thereby provided Strout with an objectively reasonable suspicion of criminal activity. *See* 29–A M.R.S.A. § 2414(2). Therefore, the court did not commit clear error when it concluded that Strout's articulable suspicion of criminal activity (*i.e.*, Lear's violation of 29–A M.R.S.A. § 2414) was objectively reasonable.

## II.

[¶ 8] The court also held that *Miranda v. Arizona*[6] did not require suppressing Lear's response to Strout's request that he submit to a blood alcohol test because, although Lear was in custody, his gratuitous response was not the product of an interrogation. Lear contends that the court erroneously denied his motion to suppress, because he claims his statement was the product of a custodial interrogation in violation of *Miranda*.

■ [¶ 9] "A *Miranda* warning is required only if a defendant is in custody and subject to interrogation." *State v. Swett*, 1998 ME 76, ¶ 4, 709 A.2d 729, 730. The *Miranda* rule does not apply to spontaneous statements that are not a response to interrogation. *See, e.g., Pennsylvania v. Muniz*, 496 U.S. 582, 605, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). As the court noted, 29–A M.R.S.A. § 2457 (1996) authorized Strout to require Lear to take a test to determine

---

4. Although the District Court did not specifically or separately address whether Strout actually had an "articulable suspicion" of criminal activity, such finding is implicit in its analysis of whether such suspicion is objectively reasonable. The record also supports the finding of an articulable suspicion. For example, Lear elicited the following response from Strout on cross-examination:

Q: [O]bviously you had the suspicion because [Lear] turned around at the roadblock?

A: He turned around at the roadblock, and also he did not stop when I was behind him, 'cause I was behind him for a mile, mile and a quarter.' He had ample time to see my blue

lights behind him. He did not pull over. He went down another road and then up another road and then in a dooryard. That aroused my suspicion.

Therefore, the court did not commit clear error as to the subjective component, since Strout had an "articulable suspicion" of criminal activity, whether or not such suspicion was objectively reasonable.

5. In fact, Lear concedes that "Trooper [Strout] followed the vehicle to the residence of [Lear]."

6. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Lear's blood alcohol level.[7] It is clear from the record that Strout merely made a routine request for Lear to submit to a blood alcohol test pursuant to 29–A M.R.S.A. § 2457, and did not elicit incriminating information or admissions. Therefore, Lear was not "subject to interrogation," and the court did not erroneously deny his motion to suppress. *Swett,* 1998 ME 76, ¶ 4, 709 A.2d at 730.

The entry is:

Judgment affirmed.

---

7. Section 2457 of Title 29–A provides, in pertinent part:

§ 2457. *Conditional license holder; OUI*

. . . .

2. *Duty to submit to test.* A person who operates a motor vehicle with a conditional license shall submit to a test if there is probable cause to believe that person holds a conditional license and operated a motor vehicle with any amount of alcohol in the blood. . . .

29–A M.R.S.A. § 2457(2) (1996).