STATE OF MAINE                  SUPERIOR COURT
CUMBERLAND, ss.                   CRIMINAL ACTION
                              DOCKET NO: CR-08-1984

STATE OF MAINE

v.                                  ORDER ON DEFENDANT'S
                                 MOTION TO SUPPRESS

SHERWOOD SMITH,

         Defendant

This matter is before the Court on the defendant's motion to suppress statements made by him during an interview with Westbrook Police Detective Sean Lally[1] because his *Miranda* rights, so-called, were violated and because his statements were not voluntary.

## BACKGROUND

On or about December 27, 2007, Oscar Moore allegedly died of a drug overdose at the defendant's apartment.

On January 3, 2008 at approximately 9:20 AM, Detective Lally went to 532 Main Street in Westbrook where the defendant's apartment was located. Lally was investigating Mr. Moore's death and wanted to speak with the defendant. The detective was in plain clothes (i.e., jeans and a sweatshirt). He had a firearm, but cannot recall if it was exposed or if it was concealed under his sweatshirt.

---

[1] Sean Lally was a detective at the time of the events that are the subject of this motion. He is currently a patrol sergeant with the Westbrook Police Department.

1

As Detective Lally entered the common area of the building, he encountered the defendant who appeared to be leaving the premises. Lally displayed his police identification and asked if the defendant would mind going to the police station to talk about Moore's death. The defendant replied that he was on his way to catch a bus to go to the "meth" clinic at Discovery House in South Portland. The detective said he was not going to arrest the defendant and would give him a ride to the clinic after they finished talking. The defendant agreed to go with the officer.

They rode to the station in Lally's unmarked vehicle. The defendant sat in the front passenger seat. He was not handcuffed. The two men made "small talk" during the ride. "Nothing important" was discussed.

At the police station, the defendant was taken to an interview room on the second floor and left alone for a brief while. The room was approximately 8' by 10'. It had one door, no window, and was furnished with a small square table in the center of the room, four chairs, and a box of tissues and a phone book on a shelf along one wall. Three of the chairs were placed at the table and the fourth was in a corner of the room. The defendant sat on one side of the table in the chair closest to the door. The door to the room was open.

The room was equipped for video and audio recording, but the defendant was not told this. The equipment was activated while the defendant was in the room. A copy of the video/audio recording of the interview was admitted without objection as State's Motion Exhibit 1. The court's review of the video indicates that the camera was mounted

2

on the wall nearly opposite the side of the table where the defendant sat.[2] The camera's view was static and continually captured the table, the chairs, and the occupants of the room.

After a short while, Detective Lally entered the room, closed the door[3] and sat in the chair on the side of the table to the left of the defendant. No one else was in the room. According to the time-stamp on the video, it was 10:27 AM.

Lally testified that he knew the defendant took prescription Klonopin for anxiety and methadone, which he obtained at the South Portland clinic. He also testified that, during the interview, the defendant did not appear under the influence of alcohol or drugs, and did not appear to be in the throes of withdrawal. That testimony is consistent with the video/audio recording of the interview. *See* State's Exh. 1.

The detective began the interview by telling the defendant that he wanted to talk about Oscar Moore's death. He also said that the defendant was free to leave at any time; that he did not have to stay; that he did not have to talk to the detective; that he was not under arrest; and that, "when we're done, I'm gonna take you to South Portland like you asked to the methodone clinic. Are you OK with all of that?," and the defendant replied, "Yes, sir."

Detective Lally and the defendant sat at the desk during the entire interview and the detective occasionally wrote on a pad of paper. At all times, the officer's demeanor was civil. Although his words were frequently blunt and accusatory, the tone of his voice was always conversational and calm.

---

[2] Neither the wall on which the camera was mounted, nor the door to the room can be seen on the video.

[3] Detective Lally told the defendant, "I'm going to close the door for privacy, all right?" The defendant replied, "Yeah."

The detective said he wanted to find out what really happened the night Mr. Moore died and that he did not believe the defendant's prior account to the police. Approximately 20 minutes into the interview, Detective Lally said, "You know, Sherwood, at some point you're going to have to provide the answers to these questions."

About four minutes later the detective asked, "What do you think should happen to you?", and the defendant said, "Jail, I guess." Then the following exchange took place:

DETECTIVE: You think you're going to jail?

DEFENDANT: Yeah.

DETECTIVE: Did I explain to you that you're not going to jail today?

DEFENDANT: You said that, yes.

DETECTIVE: Do you believe me?

DEFENDANT: Yeah. I mean I don't know what's gonna happen when it's all over ....

DETECTIVE: When it's all said and done you're gong to be held accountable, no doubt about it. But today I'm going to drive you over to South Portland like I told ya.

About four or five minutes later (approximately 30 minutes into the interview), the defendant expressed his frustration with his sister's drug use and the fact that she and others take his drugs.

DEFENDANT: My sister sits there and pukes her guts out day after day after day ... and I just ... she just takes them like candy and I just get so upset with her and I can't deal with it and I just told her ... I need my fucking meds, too. I just can't deal with it anymore. I'm just to the point I can't take it anymore. I just as soon put a bullet in my head as try ....

DETECTIVE: Well, do you have access to a gun?

DEFENDANT:     No. I'm just talking out of frustration. I'm just scared of being sick and I don't want these people around.

Four minutes later, Detective Lally said, "Are you ready to go? All right. I'm gonna ride you over there [the clinic]. Let's go." According to the time-stamp on the video, the interview ended at 11:04 AM, about 37 minutes after it began.

The parties have stipulated, and State's Exhibit 1 confirms, that the defendant was never given the *Miranda* warnings.

The defendant's primary care physician, Dr. Debra Rothenberg, testified that the defendant has been diagnosed with multiple ailments (e.g., gastroesophageal reflux disease, joint diseases, chronic low back pain, osteomyelitis and drug addiction). She is aware that he has also been diagnosed with depression, anxiety, ADHD and PTSD, but she is not a psychiatrist and does not treat him for these particular maladies. Dr. Rothenberg noted that the defendant's prescription regimen includes Prozac, Klonopin, Adderall, Prylosec, Methadone and anti-inflammatory medications.

Finally, Dr. Rothenberg viewed the recording of the defendant's interview and observed that he looked very anxious to her.[4] The court does not disagree with this observation.[5]

---

[4] She also testified that "his buttons were pushed" by Detective Lally during the interview, which "causes confusion for him", and that it was "not clear [to her] how clearly he was thinking". As noted, Dr. Rothenberg is not a psychiatrist and there is no record evidence that she is qualified to make these state-of-mind assessments based upon the interview video.

[5] In common parlance, "anxious" is defined as "a state of being uneasy, apprehensive, or worried about what may happen." WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 4th Edition, 64 (2003). That same dictionary notes that in psychiatry "anxious" can mean "an abnormal state [] characterized by a feeling of being powerless and unable to cope with threatening events, typically imaginary, and by physical tension ...." *Id.* Relatedly, Defendant attached several "exhibits" to his memorandum in support of the suppression motion, including an excerpt from the Diagnostic and Statistical Manual of Mental Disorders (DSM-1V) that describes Mixed Anxiety-Depressive Disorder.

5

DISCUSSION

(a)     *Miranda* Violation

*Miranda* warnings are required to be given when a person is "in custody and subject to interrogation." *State v. Lear*, 1998 ME 273, ¶ 9, 722 A.2d 1266, 1268 (citations omitted). The State bears the burden of establishing by a preponderance of the evidence that the warnings were not required. *See State v. Friel*, 508 A.2d 123, 127 (Me. 1986) (citations omitted). In this case, it is not disputed that Detective Lally interrogated the defendant. The issue is whether the defendant was in custody at the time.

To determine whether someone has been subjected to a <u>custodial</u> interrogation, "the court must ascertain whether a reasonable person in the defendant's position would have believed he was in police custody and constrained to a degree associated with formal arrest." *State v. Pike*, 632 A.2d 132, 133 (Me. 1993). A "reasonable person" analysis in this case, including an examination of the evidence in light of the various objective factors set forth in *State v. Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222, 1226, leads the court to conclude that the defendant was not in custody and, therefore, was not entitled to the *Miranda* warnings. *State v. Bragg*, 604 A.2d 439, 440 (Me. 1992).

In particular, several facts bear upon the determination that the defendant was not in a custodial environment. The characteristics of the interview room, while somewhat isolating, were not overbearing. No one other than Detective Lally and the defendant were present. The defendant was not handcuffed. Although the door to the room was

---

None of the defendants' memorandum "exhibits" were offered or admitted into evidence at the motion hearing and, as previously noted, Dr. Rothenberg is not a psychiatrist and there is no record evidence that she is qualified to diagnose or make a psychiatric assessment of anxiety. Accordingly, neither the psychiatric definition of "anxiety," nor the DSM-IV materials are considered by the court.

closed, he understood that it was closed for privacy and was not locked. At the outset, the defendant acknowledged his understanding that he was not under arrest; that he did not have to talk to the officer; that he was free to leave any time he wanted; and that he would be taken to the clinic when the interview was over. All of this was underscored by the calm and civil tone and manner in which the detective conducted the interview. Although Detective Lally's words during the interview were very direct and frequently accusatory, he was not coercive to any degree. In addition, the interview was brief, lasting about 37 minutes, and was terminated when the defendant affirmed that he wanted to leave.

At times during the interview, the defendant appeared anxious in the colloquial sense. That is understandable. He could reasonably have perceived from Detective Lally's questions and remarks that he, the defendant, was a focus of a police investigation. This would make many people anxious. However, at other times he was forceful or firm in his remarks and demeanor. In the court's view, the subject matter of the detectives questions and statements, not health issues, was the engine that drove the defendant's demeanor and reactions during the interview.

Viewing the totality of those circumstances, it cannot be said that a reasonable person in the defendant's position would have believed he was in police custody or constrained to a degree associated with formal arrest. Accordingly, the court concludes that the defendant was not in custody during the interrogation.

(b)     Voluntariness

The court next turns to whether the defendant's statements during the interrogation were voluntarily made. If his statements were not voluntary – that is, if

7

they were not the result of an exercise of free will and rational intellect – then use of the statements at trial would potentially violate the defendant's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Art. I, § 6 of the Constitution of Maine. The burden of proving voluntariness is upon the State and it must be proved beyond a reasonable doubt. *State v. Caouette*, 446 A.2d 1120, 1122 (Me. 1982). The determination must be made after considering the totality of the circumstances.

Of significance to this analysis is the notion that "the voluntariness requirement [] preserves a quality of fundamental fairness in the criminal justice system." *State v. Sawyer*, 2001 ME 88, ¶ 8, 772 A.2d 1173 (quoting *State v. Mikulewicz*, 462 A.2d 497, 500 (Me. 1983)) The Law Court has "adopted a more stringent standard of proof [than the federal standard] for establishing the voluntariness of statements in order to better secure the guarantee of freedom from self-incrimination [found in the Maine Constitution]."[6] *State v. Rees*, 2000 ME 55, ¶ 5, 748 A.2d 976, 978.

As previously noted, the defendant was not in custody and did not appear to be under the influence of any substances. Although the interview room was isolating to some degree, it was not an overbearing environment. The detective's civil demeanor and his assurances that the defendant was not under arrest and was free to go reinforce this conclusion. Although Detective Lally made clear that he did not believe many of the defendant's statements and urged him to tell the truth, the officer was never coercive and did not subject the defendant to trickery or the improper promise of leniency.

---

[6] "In all criminal prosecutions, the accused . . . shall not be compelled to furnish or give evidence against himself . . ." Me. Const. Art. I, § 6.

During the interview, the defendant did not appear confused or debilitated by his maladies or by the circumstances of the interview in such a way or to such an extent that causes this court to entertain a reasonable doubt about the voluntariness of his statements. His responses to questions were appropriate and unequivocal when the subject matter was benign, but became more affected as he appeared to struggle for a way to craft a response to the detective's more direct and accusatory questions and remarks. As previously noted, he appeared "anxious" in the colloquial sense during the interview. While his uneasiness and apprehension about what might happen to him was an understandable reaction to his situation, he did not appear to be in any apparent mental or physical distress to such a degree that the court could harbor a reasonable doubt that his statements were the result of an exercise of free will and rational intellect. In fact, Dr. Rothenberg testified that the defendant is being treated for his various disorders, which includes prescribed medications; that he functions well when he takes his medications as they are prescribed for him; and that she believes he takes his medications, as prescribed.

Based on the totality of these circumstances, the court concludes that the defendant was not in custody and that his statements were voluntary. Accordingly, the entry is

Defendant's Motion to Suppress is DENIED.

Dated:   January 16, 2009

_____
Justice, Superior Court

STATE OF MAINE                              SUPERIOR COURT
      vs                                    CUMBERLAND, ss.
SHERWOOD  SMITH                             Docket No  PORSC-CR-2008-01984
532 MAIN STREET #3
WESTBROOK ME 04092                          **DOCKET RECORD**

DOB: 09/21/1959
Attorney: HENRY SHANOSKI                    State's Attorney: LEA-ANNE SUTTON
          LAW OFFICE OF HENRY SHANOSKI
          386 FORE ST SUITE 204
          PO BOX 391
          PORTLAND ME 04112
          APPOINTED 08/28/2008

Filing Document: INDICTMENT                 Major Case Type: FELONY (CLASS A,B,C)
Filing Date: 08/07/2008

## Charge(s)

1   UNLAWFUL FURNISHING SCHEDULED DRUG           12/27/2007 WESTBROOK
Seq 8561   17-A   1106(1-A)(A)          Class C
    LALLY                  / MDE


## Docket Events:

08/11/2008 FILING DOCUMENT -  INDICTMENT FILED ON 08/07/2008

           TRANSFER -  BAIL AND PLEADING GRANTED ON 08/07/2008

           TRANSFER -  BAIL AND PLEADING REQUESTED ON 08/07/2008

08/11/2008 Charge(s): 1
           HEARING -  ARRAIGNMENT SCHEDULED FOR 09/10/2008 @ 11:00 in Room No.  7

           RS
08/11/2008 Charge(s): 1
           HEARING -  ARRAIGNMENT NOTICE SENT ON 08/11/2008

           RS
08/27/2008 Charge(s): 1
           MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 08/26/2008

08/28/2008 Charge(s): 1
           MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 08/28/2008
           ROLAND A COLE , JUSTICE
           COPY TO PARTIES/COUNSEL
08/28/2008 Party(s): SHERWOOD SMITH
           ATTORNEY -  APPOINTED ORDERED ON 08/28/2008

           Attorney: HENRY SHANOSKI
09/11/2008 BAIL BOND -  PR BAIL BOND FILED ON 09/11/2008

           Date Bailed: 09/11/2008
           SEE CONDITIONS; DE
09/17/2008 Charge(s): 1

HEARING - ARRAIGNMENT HELD ON 09/10/2008
WILLIAM BRODRICK , JUSTICE
Defendant Present in Court

READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO
DEFENDANT. 21 DAYS TO FILE MOTIONS
TAPE 2986

MRP
09/17/2008 Charge(s): 1
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 09/10/2008

09/17/2008 BAIL BOND - PR BAIL BOND SET BY COURT ON 09/10/2008
WILLIAM BRODRICK , JUSTICE
WITH CONDITIONS
09/18/2008 TRIAL - DOCKET CALL SCHEDULED FOR 03/16/2009 @ 8:30 in Room No. 11

MRP
10/01/2008 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 09/24/2008

TSK
10/01/2008 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 11/04/2008 @ 11:00 in Room No. 7

NOTICE TO PARTIES/COUNSEL                                                    TSK
10/01/2008 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 10/01/2008

11/12/2008 HEARING - MOTION TO SUPPRESS CONTINUED ON 11/04/2008

TSK
11/12/2008 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 12/16/2008 @ 1:00 in Room No. 7

NOTICE TO PARTIES/COUNSEL                                          HEARING
                                                        TSK
11/12/2008 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 11/12/2008

12/30/2008 TRIAL - DOCKET CALL NOTICE SENT ON 12/30/2008

JH
12/30/2008 HEARING - MOTION TO SUPPRESS HELD ON 12/16/2008
THOMAS E HUMPHREY , SUPERIOR COURT CHIEF JUSTICE
Attorney: HENRY SHANOSKI
DA: LEA-ANNE SUTTON
Defendant Present in Court

TAPE #3083/3084. STATE'S WITNESSES: 1) SHAWN LALLY, DEFENDANT'S WITNESSES: 1) DR.
ROTHENBERG. MEMO'S TO BE FILED BY 1/9/09                          JH
12/30/2008 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 12/16/2008
THOMAS E HUMPHREY , SUPERIOR COURT CHIEF JUSTICE
12/30/2008 HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 02/25/2009 @ 10:30 in Room No. 7

12/30/2008 HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ON 01/22/2009

12/30/2008 CASE STATUS - CASE FILE LOCATION ON 12/16/2008

FILE WITH JUSTICE HUMPHREY.                                          JH
01/14/2009 OTHER FILING -  MEMORANDUM OF LAW FILED ON 01/09/2009


FILED BY THE STATE                                                  TSK
01/14/2009 OTHER FILING -  MEMORANDUM OF LAW FILED ON 01/09/2009


FILED BY THE DEFENDANT IN SUPPORT OF MOTION TO SUPPRESS             TSK
01/15/2009 MOTION -  MOTION TO CONTINUE FILED BY DEFENDANT ON 01/14/2009


UNOPPOSED                                                           TSK
01/20/2009 MOTION -  MOTION TO SUPPRESS DENIED ON 01/16/2009
           THOMAS E HUMPHREY , SUPERIOR COURT CHIEF JUSTICE
           COPY TO PARTIES/COUNSEL
01/27/2009 MOTION -  MOTION TO CONTINUE GRANTED ON 01/22/2009
           PAUL E EGGERT , JUDGE
           COPY TO PARTIES/COUNSEL
01/27/2009 TRIAL -  JURY TRIAL SCHEDULED FOR 03/16/2009 @ 8:30 in Room No.   11


NOTICE TO PARTIES/COUNSEL
02/13/2009 MOTION -  MOTION FOR BAIL RECONSID. FILED BY DEFENDANT ON 02/12/2009


MOTION TO DISMISS INDICTMENT

## Exhibits

12/16/2008   STATE, Exhibit#1, DVD OF INTERVIEW, Adm w/o obj on 12/16/2008.

A TRUE COPY
ATTEST: _____
                        Clerk