STATE OF MAINE
CUMBERLAND, ss

UNIFORM CRIMINAL DOCKET
DOCKET NO. CR-16-4394

STATE OF MAINE

v.

ORDER ON MOTION TO SUPPRESS

LUKE STOVAL

## Introduction

Luke Stoval ("Stoval") has been charged by indictment with on or about July 22,
2016, in Westbrook, Operating A Motor Vehicle After Revocation, Class C, in violation
of 29-A M.R.S. §2557-A(2)(C) and violating conditions of release, Class E, in violation
of 15 M.R.S.§1092(1)(A). Stoval filed a motion to suppress, raising four issues arising
out of the stop of his vehicle by Patrolman Dean Hannon ("Officer" or "Hannon") of the
Gorham Police Department and also serving as a sworn-in Cumberland County
Commissioned Officer of the Cumberland County Sheriff's Office ("CSSO") from
September 9, 2014 to September 9, 2017. Stoval contends that the stop was not justified
by an objectively reasonable suspicion of criminal conduct, the stop was not based on a
credible "tip", the Gorham Police Officer lacked authority for an incident that occurred in
Westbrook, and Stoval's admission of driving was in violation of his *Miranda* rights and
was not voluntary.

## Facts

On July 22, 2016, Hannon, who was familiar with Stoval through family
relationships, received a phone call from Hannon's daughter's mother, Lindsay Neptune
that Stoval was driving on his way back from work to his Mill Lane residence in
Westbrook. Hannon knew Stoval's criminal history, knew Stoval was out on bail on

pending charges, and knew that Stoval did not have a license and had several convictions for operating without a license. The vehicle that Stoval was operating was registered to Rita Butler. Rita Butler is the mother of Stoval's daughter. Butler is also the daughter of Lindsay Neptune and Officer Hannon. The "tip" about Stoval's operation of a motor vehicle was from Neptune, who was a known and credible witness. She has no criminal history and a general truthful reputation.

Because Hannon is sworn in as a Cumberland County Commissioner Officer, [1] Hannon believes he has countywide jurisdiction. So, he drove past Stoval's Mill Lane residence in Westbrook. When he did not see Stoval's vehicle on Mill Lane, Hannon started back to Gorham. While heading back to Gorham, Hannon observed Stoval drive past him. Hannon turned on his blue lights, turned around onto Mill Lane where Stoval was pulling into his driveway. Stoval had an open beer in the car. Hannon knew that Stoval had been arrested on a felony charge of endangering the welfare of a child and was on bail. Although Hannon could smell the odor of intoxicants and saw the open container, he had no other indicia that Stoval was operating a motor vehicle under the influence. Hannon instructed Stoval to exit his vehicle and that he would be arrested. Hannon called Westbrook to make the arrest because he had no handcuffs and was not driving a vehicle with a cage to transport prisoners.

While Stoval was sitting in back of Hannon's vehicle with the door open, waiting for Westbrook police to arrive, Stoval asked why he was arrested. Hannon told him it

---

[1] The State produced as Exhibit 2 a photocopy of a document from the Cumberland County Sheriff's Office, which certified that "Dean Hannon of the Gorham Police Department has been sworn as a Cumberland County Commissioner Officer, effective 9/9/14 to 9/9/17." The document is signed by the Deputy of CCSO and there is a dedimus signature.

2

was because he did not have a license. Stoval told Hannon, "someone else was driving." Hannon told Stoval, "that was a lie, no one else was in vehicle." Stoval responded, he "knew he didn't have a license but he had to get to work." Hannon responded to Stoval, he should not be driving with an open container. Stoval acknowledged that he knew he should not have an open container. Stoval begged Hannon to not take him to jail. Rita Butler, who was in the front yard, was also yelling at Hannon to not arrest Stoval.[2] Hannon did not confirm Stoval's motor vehicle history prior to the arrest. He relied on information from Lindsay Neptune, the source of Hannon's tip, and Hannon's personal knowledge and observations of Stoval's driving.

Discussion

1.    Jurisdiction

Stoval argues that Hannon, a Gorham police officer, did not have lawful jurisdiction to stop him for a criminal violation that occurred in Westbrook. Hannon was not pursuing Stoval in fresh pursuit from Gorham to Westbrook.   Accordingly, Stoval argues, "No police officer has any authority in criminal or traffic infraction matters beyond the limits in which the officer is appointed." 30-A M.R.S. §2671(2).  Stoval offered no evidence on the jurisdictional issue. The Maine Supreme Judicial Court declined in *State v. Jolin*, 639 A. 2d 1062 (Me. 1994), "to adopt a *per se* rule that would require exclusion of evidence obtained in connection with an extraterritorial arrest." *Id.* at 1063.  The Court affirmed the stop of a vehicle in Bangor by a Brewer officer who observed while still in Bangor following a coffee break, the defendant's car traveling

---

[2] As part of this stop, Hannon also called Stoval's employer to make sure he knew that Stoval was not licensed and should not have been driving. This fact is irrelevant and did not play a role in the court's analysis.

3

with its headlights off, swerve into a snowbank, cross over its lane and into her lane, then drift back over and hit the snowbank again. When the car crossed over into the officer's lane a second time, the officer turned her cruiser around and followed defendant, ultimately turning on her blue lights and stopping defendant while he was still in Bangor. Jolin conceded there was probable cause to arrest him but moved to suppress the evidence from the stop because the extraterritorial arrest violates Maine's fresh pursuit statute and is unreasonable for purposes of the Fourth Amendment. Based on the facts in the *Jolin* case, the court refused to apply the fresh pursuit statute and apply the exclusionary rule. Rather, the Supreme Court held that evidence obtained from an extraterritorial arrest based on probable cause should not *pre se* be excluded. *Id.*, 639 A. 2d at 1064.

The *Jolin* Court warned,

> [W]e are sensitive to the abuses that could follow an intentional or premeditated disregard of territorial limits. Law enforcement officers should not make excursions into other jurisdictions to ferret out crime. Here the officer had probable cause to arrest defendant and her action was reasonable in light of the immediate need to prevent defendant from harming himself or others.

*Id.*

The implication of defendant's argument is that Hannon had it out for him because of family gossip about Stoval. There is no evidence of this motivation. Hannon knew that Stoval did not have a license, was convicted of prior operating without a license convictions and was on bail. He also received a reliable tip that Stoval was in the process of driving home from work. In the absence of any evidence to show that Hannon was trying to intentionally disregard the territorial limits in order to ferret out crime, and

4

with evidence that Hannon had probable cause to arrest Stoval, Hannon's extraterritorial stop of Stoval was reasonable.

Furthermore, Hannon believe he had countywide jurisdiction as a sworn in Cumberland County Sheriff and that he could lawfully pursue Stoval in Westbrook with probable cause to believe Stoval was or had committed a crime. Hannon offered State's Exhibit 2, which is a copy of a card certifying that Hannon was a Cumberland County Commissioner Sheriff. This card is signed by the Deputy of the Cumberland County Sheriff's Office and signed by a Dedimus. No evidence was introduced to challenge this certification. Possessing this certification, that was effective for the time in question, and believing it gave him countywide jurisdiction, the extraterritorial stop was reasonable. And, there is always the concern for public safety, which justifies the stop.

2.    Reasonable Articulable Suspicion

"A stop is justified when an officer's assessment of the existence of specific and articulable facts indicating a possible violation of law or a public safety risk is objectively reasonable considering the totality of the circumstances." *State v. Simmons*, 2016 ME 49, ¶ 8 (quoting *State v. Connor*, 2009 ME 91, ¶10, 997 A. 2d 1003). "[T]he threshold for demonstrating an objectively reasonable suspicion necessary to justify a vehicle stop is low . . . The suspicion need only be more than a speculation or an unsubstantiated hunch." *Id.* (quoting *State v. LaForge*, 2012 ME 65, ¶10, 43 A. 3d 961). Defendant contends that Hannon lacked reasonable articulable suspicion to arrest him.

Officer Hannon had reasonable articulable suspicion that Stoval was driving without a license. Hannon was familiar with Stoval and knew he did not have a license. Hannon observed Stoval operating a motor vehicle without a license. Hannon also based

5

his stop on the tip from a reliable informant that Stoval was driving home from work. As a sworn deputy with countywide jurisdiction, he had authority to stop Stoval if he had sufficient justification for the stop of a vehicle. *See State v. Webber*, 2000 ME 168, ¶7, 759 A.2d 724. Observations of Stoval driving on a public way without a license were a sufficient basis for a stop of Stoval's vehicle. Hannon's suspicion that Stoval was operating a motor vehicle without a license was objectionably reasonable under all of the circumstances.

The threshold for a justified stop is low: it "is considerable less than proof of wrongdoing by a preponderance of the evidence," *State v. Porter*, 2008 ME 175, ¶9, and "need not arise to the level of probable cause." *State v. Sylvain*, 2004 ME 5, ¶17, 814 A.2d 984. Yet, here there was probable cause to believe that Stovall was violating the law by operating a motor vehicle without a license. Hannon was operating on more than bare speculation or an unsubstantiated hunch. He had the reliable and credible tip from Lindsay Neptune, he knew Stoval, he knew of Stoval's criminal history, arrest record, that he was on bail and the fact that Stoval did not have a license to operate a motor vehicle. He also observed first hand Stoval operating a motor vehicle. Here the totality of the circumstances justified a stopped based on reasonable articulable suspicion. Furthermore, these same circumstances justified the arrest of Stoval for operating a motor vehicle without a license.

3.    The "Tip"

Stoval argues unsuccessfully that the tip was uncorroborated and could not be relied upon for reasonable articulable suspicion. This was not an anonymous tip. This was a very reliable tip from someone Officer Hannon knew and someone who Hannon

6

knew to be a reliable source. Officer Hannon also knew that Stoval did not have a license and saw Stoval operating a motor vehicle with an open container just before stopping Stoval's vehicle. Hannon was fully justified in stopping Stoval's vehicle. The tip did nothing more than alert Hannon to the fact that Stoval was driving home from work. For the stop, Hannon relied on his own personal knowledge that Stoval did not have a license, and had prior operating without a license convictions. Moreover, Hannon observed first hand Stoval operating a motor vehicle on a public way at a time he knew that Stoval did not have a license to operate a motor vehicle.

4. *Miranda*

A *Miranda* warning is required only if a defendant is in custody and subject to interrogation. See, e.g. *State v. Swett*, 1998 ME 76, ¶ 4, 709 A. 2d 729, 730. "The *Miranda* rule does not apply to spontaneous statements that are not a response to interrogation." *State v. Lear*, 1998 ME 273, 722 A. 2d 1266, citing *Muniz*, 496 U.S. 605. Stoval was not in custody. He was waiting in Hannon's vehicle for a Westbrook officer to arrive. Stoval was sitting in the back seat with the door open. Hannon did not arrest Stoval.

Stoval was not subject to police interrogation. Hannon did not elicit incriminating statements or admissions. Some of Stoval's comments were spontaneously volunteered statements to which the police have no duty to ward against. *See State v. Young*, 662 A.2d 904, 907-08 (Me. 1995). Hannon did not make police comments or demonstrate conduct "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *State v. Rossignol*, 627 A.2d 524, 526 (1993) (quoting *State v. Nixon*, 599 A.2d 66, 67 (Me. 1991)). The full extent of Officer Hannon's conversation with

7

Stoval proceeded as follows: Stoval inquired why he was arrested. Hannon told him it was because he did not have a license. Stoval responded, "someone else was driving." When Hannon told Stoval that was a lie, no one else was in the vehicle, Stoval responded, he knew that he did not have a license but he had to get to work. Hannon told Stoval he should not be driving with an open container. Stoval acknowledge that he should not be driving with an open container. Hannon was either answering Stoval's questions or telling Stoval why he was stopped and would be arrested; he did not interrogate Stovall. He did not ask questions of Stoval, but rather Stoval spontaneously volunteered statements that Hannon had no duty to ward against. Accordingly, there is no *Miranda* violation here.

### 5. Voluntariness

The burden is on the State to prove beyond a reasonable doubt that Stoval's statements were voluntary. *See State v. Sawyer*, 2001 ME 88, ¶ 8, 772 A. 2d 1173. The court must consider the totality of the circumstances in determining whether a confession is voluntary. *Id.* at ¶ 7. "In order to find a statement voluntary, it must first be established that it is the result of defendant's exercise of his own free will and rational intellect." *Id.* at ¶ 8 (citation omitted). Factors to consider in doing this analysis include the following: details of the interrogation; duration of the interrogation; location of the interrogation; whether interrogation was custodial; recitation of the *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; any threats, promises or inducements made; and the defendant's age, physical and mental health, emotional stability and conduct. *Id.* at ¶ 9. "To be voluntary, a confession must be the free choice of a rational mind, fundamentally fair, and not a product of coercive

8

police conduct." *State v. Bryant*, 2014 ME 94, ¶ 16 (quoting *State v. Nightingale*, 2012 ME 132, ¶ 17).

There was no trickery or coercion in any of Hannon's statements to Stoval. There was no interrogation and Stoval was not in custody. Stoval's statements were the free choice of a rational mind, fundamentally fair and not a product of coercive police conduct.

The entry is:

Motion to Suppress is DENIED.

Date: February 24, 2017

Joyce A. Wheeler, ARJ
Maine Superior Court

9