STATE OF MAINE                              UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                             PORTLAND
                                            Docket No. CDCR-21-00037

STATE OF MAINE              )
                           )
v.                         )                ORDER ON DEFENDANT'S
                           )                MOTION TO SUPPRESS
                           )
IAN SOULE                  )
                           )
            Defendant      )

Defendant's Motion to Suppress came before the court for hearing on November 2, 2021. Defendant, Ian Soule, was present with his lawyer, Attorney Robert Levine. Assistant Attorney General Johanna Gauvreau appeared on behalf of the State. The court heard testimony from Special Agent Matthew Morrison of the Maine Drug Enforcement Agency and Officer Jason Leadbetter of the Portland Police Department regarding the circumstances of Defendant's arrest. The court also viewed video of the arrest taken from South Portland Police Officer Caleb Gray's body worn camera (State's exhibit 1) and interior camera of the relevant South Portland Police Department vehicle (State's exhibit 2).[1]

Mr. Soule seeks suppression of statements he made during his interactions with officers because he had invoked his Fifth Amendment rights to counsel and silence at the onset of his arrest by saying, "I have a lawyer. Call Dan Knight." (State's exhibit 1 at 7:30).

*Miranda* requires both custody and interrogation. "In order for the statements made prior to a *Miranda* warning to be admissible, the State must prove, by a preponderance of the evidence, that the statements were made while the person was not in custody, or was not subject to interrogation." *State v. Bridges*, 2003 ME 103, ¶ 23, 829 A.2d 247. There is no question that the Defendant was in fact in custody at the time of both his statement that he had a lawyer and his conversations with more than one law enforcement officers on the scene. *See State v. Glenn*, 2021 ME 7, ¶ 21, 244 A.3d 1023. The question for the court is whether Defendant was subject to interrogation.

---

[1] The parties entered a signed stipulation consenting to the admission of both videos as evidence.

DEC 3 '21 AM 10:59
REC'D CUMB CLERK OF

The Supreme Court has stated, "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subject to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300. *Innis* defines interrogation for the purposes of *Miranda* as "express questioning or its functional equivalent." *Id.* It goes on to define the functional equivalent of express questioning as "[W]ords or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

Statements not prompted by interrogation within the meaning of *Miranda* do not require suppression at trial. *Pennsylvania v. Muniz*, 496 U.S. 582, 605 (1990). "The *Miranda* rule does not apply to spontaneous statements that are not a response to interrogation." *People v. Lear*, 1998 ME 273, ¶ 9, 722 A.2d 1266. In Maine, the court must assess the totality of the circumstances surrounding Defendant's statements in order to assess if the statements were voluntary, that is, "the result of the defendant's exercise of his own free will and rational intellect." *State v. Leone*, 581 A.2d 394, 397 (Me. 1990) *citing State v. Barczak*, 562 A.2d.140, 144 (Me. 1989). With the exception of one passing exchange with one officer on the scene, Defendant was not subject to custodial interrogation or the functional equivalent until Officer Leadbetter arrived to the scene.

"Once in custody, a defendant does not necessarily invoke his right to counsel every time he uses the word 'attorney.'" *State v. Nielsen*, 2008 ME 77, ¶¶ 15-17, 946 A.2d 382 citing *State v. Curtis*, 552 A.2d 530, 532 (Me. 1988). Fewer than sixty seconds after announcing that he had a lawyer, Defendant continued talking, making statements that were not in response to any questioning from law enforcement and asking questions about the investigation. The court finds Defendant's statements between the beginning of his contact with police up to and including the statement, "My name was just cleared the other day when I purchased a firearm. I don't have any warrants," were not the result of interrogation.[2] Defendant's statements were spontaneous and voluntary.

---

[2] This appears at approximately 11:08 of State's exhibit 1. Since this court finds Defendant's statements at this juncture were not the product of interrogation, it does not reach the question of waiver. *See Innis* at 298 n.2.; *See*

2

However, while walking Defendant to the police vehicle, one officer responded to Defendant's spontaneous statement that he had just purchased a firearm by asking a question that was reasonably likely to elicit an incriminating response.[3] As such Defendant's statements regarding his purchase of a firearm and use of marijuana that appear in State's exhibit 1 beginning at 11:09 through 11:55 are the result of the functional equivalent of interrogation and are suppressed.[4] *See Innis*, 446 U.S. at 300-301.

At approximately 12:04 on Officer Gray's body-worn camera (State's exhibit 1), as Defendant sits in the back of the marked police car in handcuffs, he asks questions about the warrant and continues to talk, again not in response to any questions by police. Defendant's questions go unanswered or are answered by Officer Gray with little to no substantive response. Twice Defendant inserts himself into conversation that officers are having between themselves outside of the car; one time responding to two officers discussing between themselves whether or not Defendant had been searched at the scene, and once offering the name of presumably the other occupant of the vehicle he was in. These statements were not in response to interrogation and, as such, are not suppressed.

At approximately 17:15 of State's exhibit 1, Defendant, sitting inside a marked police car, asks out of the window, "Did you guys run my name yet?" It is only then that Special Agent Morrison converses with Defendant informing him that there is a warrant for his arrest for a felony gun crime. Special Agent Morrison gives general information about what Defendant might expect to happen next when Officer Leadbetter, the lead investigator, arrives. Special Agent Morrison asks Defendant no questions. He spends less than two minutes standing outside the police car, speaking to Defendant in a conversational tone, alone, with no weapons drawn or touched. Defendant asks a question about specifics of the warrant, which Morrison declines to answer without the lead investigator present. While Special Agent Morrison did tell Defendant that, in sum, Defendant might help himself by telling the truth to investigators if and when the

---

also *Edwards v. Arizona*, 451 U.S. 477, 486-487 (1981), citing *Innis* that in the absence of interrogation there is no right upon which to infringe, and thus no right able to be waived.

[3] 11:09 – 11:56 of State's exhibit 1.

[4] In many cases, the same statements are audible on both State's exhibit 1 and State's exhibit 2. The parties are advised that if a statement suppressed in this decision is cited to one exhibit, it is also applicable to the other exhibit.

3

time came that he was questioned, he made no express promises or threats while speaking to Defendant. *See State v. McNaughton*, 2017 ME 173; *See also State v. Hunt*, 2016 ME 172, 151 A.3d 911. As Defendant makes no responses that were the result of interrogation, Defendant's statements during this portion of the interaction are not suppressed.

Beginning at 47:05 of the interior camera of the marked police vehicle (State's exhibit 2), Defendant asks when Leadbetter might arrive, and attempts to make small talk with Officer Gray. Two minutes later, Officer Leadbetter arrives. Leadbetter asks no questions but he gives Defendant insight on some evidence the police have already and encourages the Defendant that he may be able to help himself by speaking to him about the case. Defendant offers unsolicited information about his substance use.[5] Leadbetter reads Defendant his rights pursuant to *Miranda* from what appears to be a written aid. Defendant expressed that he understood each individually and agreed to speak to Officer Leadbetter at the scene without an attorney. While answering Officer Leadbetter's questions, there came a point where Defendant didn't want to go further, he expressed that, and the questioning stopped. Based on the foregoing, this court finds Defendant waived his rights under Miranda knowingly, intelligently, and voluntarily.

It is accordingly ORDERED that Defendant's motion to suppress is GRANTED with regard to Defendant's statements between 11:09 and 11:55 of State's exhibit 1, and DENIED as to the remainder of the statements recorded on State's exhibits 1 and 2.

DATED: 1 Dec 2021

Jed J. French, Chief Judge
Maine District Court

---

[5] This court's finding with regard of Defendant's disclosures about his substance use and treatment is limited to admissibility as a spontaneous statement not made in response to interrogation.

4