2012 ME 65

**STATE of Maine**

v.

**Cory W. LaFORGE.**

Supreme Judicial Court of Maine.

Argued: April 11, 2012.
Decided: May 15, 2012.

Carletta M. Bassano, District Attorney, and Mary N. Kellett, Asst. Dist. Atty. (orally), Prosecutorial District No. VII, Ellsworth, for appellant State of Maine.

Richard L. Hartley, Esq. (orally), Law Office of Richard L. Hartley, Bangor, for appellee Cory LaForge.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] The State appeals from an order of the District Court (Ellsworth, *Mallonee, J.*) granting Cory W. LaForge's motion to suppress evidence derived from a stop of his vehicle by an officer of the Bar Harbor Police Department. LaForge contended, and the court agreed, that the stop was not justified by an objectively reasonable suspicion of criminal conduct. The State contends on appeal that the court was, based on the facts it found, compelled to find that the stop was justified. We agree with the State and vacate the suppression order.

## I. FACTS

[¶ 2] The District Court's factual findings are supported by the record and are not challenged by the State. Accordingly, we accept the court's findings. *See State v. Porter*, 2008 ME 175, ¶ 7, 960 A.2d 321 (stating that a motion court's factual findings are reviewed for clear error).

[¶ 3] On August 17, 2010, at about 12:30 a.m., Officer Eric McLaughlin of the Bar Harbor Police Department turned onto Eagle Lake Road in Bar Harbor and began following a vehicle driven by Cory LaForge. Officer McLaughlin testified that the weather and visibility that night were both good. Eagle Lake Road, which McLaughlin described as a "twisting, winding road with quite a few hills," is approximately five miles long. McLaughlin followed LaForge's vehicle for approximately four miles before stopping it; during that time there was no other traffic that he could recall.

[¶ 4] Over the course of the four-mile stretch, McLaughlin observed six "line violations" occurring in three groups:

1. On a "straighter" section of the road, the vehicle went onto, but not over, the double-yellow centerline, then corrected, then went onto the centerline again;

2. "[S]ome distance later," the vehicle's passenger-side tires completely crossed the white fog line; the vehicle then returned to its lane, then immediately crossed the fog line again;

3. Farther on, the vehicle's driver-side tires completely crossed the double-yellow centerline, the vehicle corrected, then it crossed the centerline again.

[¶ 5] After observing the six line violations, McLaughlin stopped LaForge's vehicle. The stop was not based on speed or any other factor apart from the line violations. McLaughlin could not testify as to where along the four-mile stretch of Eagle Lake Road the violations had occurred, or how much time or distance separated the three groups of violations. He wrote a report the same night with the aid of contemporaneous notes. The court found McLaughlin's testimony at the suppression hearing credible.

[¶ 6] LaForge was charged with criminal operating under the influence (Class D), 29–A M.R.S. § 2411(1–A)(A) (2011). His motion to suppress any evidence obtained as a result of the stop of his vehicle was heard, taken under advisement, and subsequently granted by written order. The motion court found that given the totality of the circumstances, which included both McLaughlin's observations and the absence of other indicia of impairment, "[i]n context, all of the errors appeared trivial. Even taken together, and even given the low standard of justification for an investigatory stop, the stop of Defendant was objectively unreasonable."

[¶ 7] The State filed a notice of appeal, accompanied by the written approval of the Attorney General pursuant to 15 M.R.S. § 2115–A(5) (2011) and M.R.App. P. 21(b).

## II. DISCUSSION

[¶ 8] The Fourth Amendment to the United States Constitution and article I, section 5 of the Maine Constitution protect motorists from being unreasonably stopped by police. *See State v. Cusack,* 649 A.2d 16, 18 (Me.1994). Those provisions require that, "[i]n order to support a brief investigatory stop of a motor vehicle . . . a police officer must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur." *Porter,* 2008 ME 175, ¶ 8, 960 A.2d 321 (quotation marks omitted).

[¶ 9] Whether Officer McLaughlin's subjective suspicion that LaForge was impaired was objectively reasonable under the totality of the circumstances "is a pure question of law." *Id.* (quotation marks omitted). Accordingly, although we accept the motion court's factual findings because they are not clearly erroneous, the court's determination that the stop in this case was objectively unrea-

sonable is a legal conclusion that we review de novo. *State v. King*, 2009 ME 14, ¶ 6, 965 A.2d 52. Because the State bore the burden of proof on the motion to suppress, it must demonstrate on appeal that, as a matter of law, the stop of LaForge's vehicle was based on a reasonable and articulable suspicion. *See State v. McPartland*, 2012 ME 12, ¶ 12, 36 A.3d 881.

[¶ 10] In analyzing whether McLaughlin's observations satisfied constitutional standards for stopping LaForge's vehicle, we first repeat our prior holdings that "there is no mechanical standard for reviewing a court's conclusions on whether an officer's suspicion was objectively reasonable," *Porter*, 2008 ME 175, ¶ 9, 960 A.2d 321, meaning that there is no precise number of line touchings or crossings by a vehicle operator that delineates a constitutionally justified stop from an unjustified one. *See also Cusack*, 649 A.2d at 18 (stating that there is no "mechanical standard"); *State v. Carnevale*, 598 A.2d 746, 749 (Me.1991) (same). That said, we have recognized that the threshold for demonstrating an objectively reasonable suspicion necessary to justify a vehicle stop is low, in that "reasonable articulable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence," *Porter*, 2008 ME 175, ¶ 9, 960 A.2d 321 (quotation marks omitted), and need not rise to the level of probable cause, *State v. Sylvain*, 2003 ME 5, ¶ 17, 814 A.2d 984. "The suspicion need only be more than speculation or an unsubstantiated hunch." *Porter*, 2008 ME 175, ¶ 9, 960 A.2d 321. Application of that standard properly "balances the driver's right to be free from excessive restraint by the State against the public's right not to be placed at risk by an impaired driver." *Id.; see Sylvain*, 2003 ME 5, ¶ 17, 814 A.2d 984.

[¶ 11] Although there is no mechanical standard that we apply to resolve the issue in this appeal, we are guided by our prior analysis of similar factual situations. In *State v. Pelletier*, an officer followed the defendant's vehicle for four to five miles and stopped it after observing the vehicle cross the centerline three times and drift onto the shoulder once over that distance. 541 A.2d 1296, 1296–97 (Me.1988). We held that, given those facts, "The officer clearly had more than speculation or an unsubstantiated hunch that the driver was operating under the influence." *Id.* at 1297 (quotation marks omitted).

[¶ 12] More recently, in *State v. Porter*, the State appealed from the suppression of evidence following a stop where, within a quarter of a mile, the defendant drove onto the fog line, then over the centerline by a foot, and then onto the center and fog lines again. 2008 ME 175, ¶¶ 2–3, 12, 960 A.2d 321. We concluded that those observations gave rise to an objectively reasonable suspicion of impaired driving and vacated the suppression order. *Id.* ¶¶ 12–13.

[¶ 13] Here, the motion court found as fact that McLaughlin saw LaForge drive onto the centerline twice, then later completely cross the fog line with his passenger-side tires twice, and then completely cross the centerline with his driver-side tires twice more. As was the case in *Pelletier* and *Porter*, McLaughlin's articulated observations, made here in three distinct groups, amount to considerably more than bare speculation or an unsubstantiated hunch that LaForge was impaired.[1] We noted in *Porter* that that is "[t]he only requirement we have imposed on the rea-

---

1. These facts are also significantly more egregious than those in *State v. Caron*, where we found that a single centerline straddle did not justify a stop because "[a] vehicle's brief, one time straddling of the center line of an undivided highway is a common occurrence." 534 A.2d 978, 979 (Me.1987).

sonable articulable suspicion standard." *Id.* ¶ 11. Accordingly, we conclude, as a matter of law based on the facts found by the motion judge, that the stop of La-Forge's vehicle was justified based on an objectively reasonable articulable suspicion.

The entry is:

Order granting suppression vacated. Remanded for entry of an order denying the motion to suppress.