STATE OF MAINE        UNIFIED CRIMINAL DOCKET
KENNEBEC, ss.         LOCATION: AUGUSTA
              Docket No. KENCD-CR-18-20348

STATE OF MAINE,    )
           )
v.           )  **ORDER ON MOTION TO SUPPRESS**
           )
STEVEN GALATI,    )
           )
   Defendant   )

Defendant has been charged with two counts of Unlawful Possession of Scheduled Drugs, Classes D and E pursuant to 17-A M.R.S.A. § 1107-A(1)(C) and 17-A M.R.S.A. § 1107-A(1)(F). Before the Court is Defendant's Motion to Suppress filed on June 25, 2018 and argued before this Court on September 20, 2018.

## BACKGROUND

The Motion to Suppress filed by the Defendant addresses three different cases with an array of constitutional challenges. For our purposes, this Court will only be addressing the constitutional issues associated with the incidents occurring on February 6, 2018. On February 6, 2018, Trooper Jon Brown (hereinafter Trooper Brown) of the Maine State Police was one of several officers engaging in a detail regarding distracted drivers, focusing specifically on the "move over law" depicted in 29-A M.R.S.A. § 2054(9) (2017). Around 10:00 A.M. on February 6, 2018 Trooper Brown, while in uniform, was completing a traffic stop of a commercial truck. After finishing the traffic stop, Trooper Brown was sitting in his fully marked SUV cruiser behind the commercial truck waiting for the truck to pull onto the freeway. While waiting in the breakdown lane, with his emergency lights still engaged, a white Chevrolet motor vehicle passed Trooper Brown and shook his cruiser due to its proximity in the adjacent lane.

Pursuant to Maine law, a driver passing a stationary authorized emergency vehicle with emergency lights on must attempt to move over to a passing lane rather then pass the stationary vehicle in the adjacent lane. 29-A M.R.S.A. § 2054(9)(A). If it is impossible for a vehicle to move to a passing lane, the operator is required to pass the stationary authorized emergency vehicle "at a careful and prudent speed reasonable for passing the authorized vehicle." 29-A M.R.S.A. § 2054(9)(B). Based on 29-A M.R.S.A. § 2054(9), when Trooper Brown saw there were no vehicles

in the passing lane which would have hindered the white Chevrolet from moving over, he pulled out onto the interstate and began to pursue the Chevrolet.

Due to the speed at which the Chevrolet was traveling, it took Trooper Brown a few moments to catch up to the vehicle. While in pursuit, Trooper Brown contacted dispatch to inform them and his detail that he was administering a traffic stop. Trooper Brown proceeded to pull the vehicle over at mile marker 116 on I-95 and approached the car on foot. There were three people in the vehicle which included the Defendant as the driver and two passengers. Trooper Brown engaged in regular traffic citation practice and asked the parties for their identification, for vehicle information, and asked all parties a few informative questions. As testified to at the Motion to Suppress hearing, Trooper Brown stated he asked the Defendant and the passengers the following: Where are you going? Where are you coming from? What are you doing? According to Trooper Brown, this conversation lasted for 1-2 minutes. During this dialogue, Trooper Brown became suspicious because the Defendant and his passengers were inconsistent in their answers. The Defendant and the passengers informed Trooper Brown they were going to New York to visit the Defendant's sick father, but all parties were inconsistent as to where they would be staying and what else they would be doing in New York. Trooper Brown articulated his suspicion at the Motion to Suppress hearing and explained that this suspicion led him to call in a second officer with a canine unit.

While waiting for the second officer to arrive, Trooper Brown continued with his traffic stop in relation to the Defendant's violation of 29-A M.R.S.A. § 2054(9). Within a couple of minutes of calling in a second officer, Corporal Derrick Record (hereinafter Corporal Record) arrived on the scene with his canine unit. After Corporal Record pulled over behind Trooper Brown's cruiser, he approached Trooper Brown and asked for details regarding the situation. Although there are some inconsistencies in testimony as to whether Trooper Brown was getting in his car or was already in his car when Corporal Record arrived on the scene, what is clear is that Trooper Brown had not yet finished the traffic stop when Corporal Record appeared. After being filled in on the circumstances of the stop, Corporal Record approached the white Chevrolet and Trooper Brown remained in his cruiser to continue the necessary steps to complete the traffic citation. Trooper Brown testified this took a few minutes and that he had not finished the stop prior to Corporal Record arriving at the scene.

2

From Corporal Record's point of view, he too was working the "move over" detail with Trooper Brown and was located at mile marker 120 when he heard over dispatch that Trooper Brown was in pursuit of a white Chevrolet. Within 2-3 minutes, Corporal Record was asked to join Trooper Brown at mile marker 116 with his canine. Corporal Record testified that it took him 3-4 min to arrive at mile marker 116. Trooper Brown informed Corporal Record about the reason for the stop and that he was suspicious of the Defendant and the two passengers due to their inconsistent statements and nervousness. Due to this suspicion, Trooper Brown wanted to have Corporal Record on the scene as a second officer for back up and for Corporal Record to have his canine sniff around the vehicle.

After speaking to Trooper Brown, Corporal Record approached the Chevrolet, without his canine, and addressed the Defendant and the two passengers. Corporal Record informed the Defendant and the passengers he was going to have his dog sniff around the car; however, prior to doing that he asked all three people if there were any narcotics or weapons in the vehicle. At first all parties said no, but Corporal Record asked again if there were any narcotics and the female passenger informed him she had marijuana on her person. After the female passenger spoke up, the male passenger in the back seat also informed Corporal Record he had marijuana on his person. Corporal Record informed the parties that his canine is not triggered by marijuana, but asked both passengers to show him the marijuana. The female passenger showed Corporal Record her marijuana without incident. The male passenger opened a backpack to show his marijuana, and while looking into the backpack Corporal Record saw narcotic paraphernalia. Specifically, he saw what appeared to be a crack or heroin pipe used to smoke illegal narcotics. Corporal Record also saw a razor blade in the backpack. After seeing the drug paraphernalia, Corporal Record asked both passengers to step out of the car.

Corporal Record patted down the male passenger for weapons and narcotics and also patted down the female passenger for weapons. Once the pat downs were completed, Corporal Record asked the Defendant if he would exit the vehicle and speak to him on the roadside. Corporal Record spoke to the Defendant for 3-5 minutes and asked if he had any narcotics on him, which led the Defendant to admit that he had prescription pills that were not his. After gaining this information, Corporal Record did a pat down of the Defendant, felt an item on him that felt like cash, and eventually pulled out a wad of cash in the sum of $800.00. After the pat down, Corporal Record

3

returned to his vehicle to run the names of the Defendant and the passengers with other officers and agencies. Corporal Record testified that the process of the name search took 5-6 minutes.

After finishing the name search, Corporal Record returned to the Defendant and inquired what the money was for. The Defendant and the passengers changed their original story and stated they were bringing rent money to the Defendant's sister in New York. Thereafter, the Defendant told Corporal Record that the illegal pills he had were in the trunk of his vehicle in a bag. Corporal Record opened the trunk of the vehicle, saw a duffle bag, and found suboxone strips, prescription pills determined to be Xanax after being tested, and $4,000.00 in $1,000.00 bundles. Corporal Record then brought out his canine and did person sniffs of the Defendant and the passengers. Thereafter, Corporal Record called for other officers to come to the scene. At the end of the interaction between police and the Defendant, Mr. Galati was not arrested. Rather, he was summoned by Corporal Record for the drug possession charges and was given a traffic citation by Trooper Brown pursuant to his violation of 29-A M.R.S.A. § 2054(9).

The Defendant brought this Motion to Suppress challenging the constitutionality of the traffic stop claiming under several grounds of law that his Fourth Amendment rights were violated. Based on the evidence presented at the hearing, this Court denies the Defendant's Motion to Suppress.

## DISCUSSION

### I.     Validity of Traffic Stop

The Defendant argues that the State has failed to meet its burden in proving that there was a violation of 29-A M.R.S.A. § 2054(9). At the Motion to Suppress hearing, Defense counsel argued that the State has to meet at least the burden of preponderance of the evidence that the traffic infraction did occur, and by failing to meet this burden the stop was not justified under the Fourth Amendment. This is an incorrect interpretation of the law. Under 29-A M.R.S.A. § 2054(9) the law states the following:

> **9. Stationary vehicles.** The operator of a vehicle passing a stationary authorized emergency vehicle using an emergency light or a stationary wrecker using its authorized lights, with due regard to the safety and traffic conditions, shall:
>
> > **A.** Pass in a lane not adjacent to that of the authorized emergency vehicle or wrecker, if possible; or

4

**B.** If passing in a nonadjacent lane is impossible or unsafe, pass the emergency vehicle or wrecker at a careful and prudent speed reasonable for passing the authorized emergency vehicle or wrecker safely.

A violation of this subsection is a traffic infraction for which a minimum fine of $250 must be adjudged. 29-A M.R.S.A. § 2054(9).

In regard to the above statute, law enforcement officers are guided by Title 29-A as to their authority in stopping motor vehicles as follows:

> **1. Authority to stop motor vehicle.** If a law enforcement officer has *reasonable and articulable suspicion* to believe that a violation of law has taken or is taking place, that officer, if the officer is in uniform, may stop a motor vehicle for the purpose of:
>
> > **A.** Arresting the operator for a criminal violation;
> > **B.** Issuing the appropriate written process for a criminal or civil violation or a traffic infraction; or
> > **C.** Questioning the operator or occupants.

29-A M.R.S.A. § 105(1) (emphasis added).

The Law Court also addressed the guidelines regarding an investigatory stop of a motor vehicle and has stated the standard as follows:

> The Fourth Amendment to the United States Constitution and article I, section 5 of the Maine Constitution protect motorists from being unreasonably stopped by police .... Those provisions require that, [i]n order to support a brief investigatory stop of a motor vehicle ... a police officer must have an *objectively reasonable, articulable suspicion* that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur.

*State v. Laforge*, 2012 ME 65, ¶ 8, 43 A.3d 961 (internal quotations omitted) (emphasis added).

The Supreme Court defined the reasonable articulable suspicion standard by finding that a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In compliance with the Supreme Court holding, the Law Court has further addressed the standard of reasonable articulable suspicion by stating that:

5

> [T]he threshold for demonstrating an objectively reasonable suspicion necessary to justify a vehicle stop is low, in that reasonable articulable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, and need not rise to the level of probable cause. The suspicion need only be more than speculation or an unsubstantiated hunch.

*Laforge*, 2012 ME 65, ¶ 10, 43 A.3d 961 (internal quotations omitted).

Here, the State does not carry any burden to prove either by a preponderance of the evidence or beyond a reasonable doubt whether or not the Defendant did in fact violate 29-A M.R.S.A. § 2054(9). Rather, the State must establish that Trooper Brown had reasonable and articulable suspicion that the Defendant violated 29-A M.R.S.A. § 2054(9) when Trooper Brown saw and felt the Defendant pass his car in the adjacent lane. Trooper Brown clearly articulated to the Court that he reasonably believed the Defendant passed his car in violation of 29-A M.R.S.A. § 2054(9) based on his first-hand perception at the time of the incident.

The Court is not seeking to find if the Defendant has committed a traffic infraction regarding the above "move over law" violation because it is both not necessary nor the purpose of a Motion to Suppress hearing. The purpose of this Motion to Suppress hearing is to establish whether law enforcement properly followed the guidelines of Fourth Amendment jurisprudence. This Court finds that Trooper Brown was able to reasonably articulate his suspicion that the Defendant had passed by his stationary authorized emergency vehicle in the adjacent lane, that it was possible for him to move over to the passing lane, and the Defendant failed to do so. Therefore, because Trooper Brown was able to reasonably articulate his suspicion regarding the Defendant's conduct under 29-A M.R.S.A. § 2054(9) pursuant to Fourth Amendment doctrine, the traffic stop was constitutionally valid.

## II.    Traffic Stop Duration

The Defendant argues that Trooper Brown illegally prolonged his traffic stop by calling Corporal Record and requesting he come to the scene with his canine. The Court disagrees with the Defendant's contention and finds that the traffic stop was not prolonged. The Supreme Court has established in relation to routine traffic stops that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

6

Following that doctrine, the Supreme Court noted that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 1614 (2015).

For guidance as to when a traffic stop has gone on too long, the Supreme Court held that a court should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 657, 686 (1985). Looking to Maine policy specifically, it is suggested to Maine law enforcement that a stop which exceeds 20-25 minutes most likely becomes a seizure that requires appropriate probable cause. *See* Ferdico & Walton, *Maine Law Enforcement Officer's Manual* 4-22 (2013-2016 ed.). As for dog sniffs, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Caballes*, 543 U.S. 405, 410 (2005).

Here, the facts of this specific case are paramount as to whether the stop was unconstitutionally prolonged. Based on the testimony of Trooper Brown and Corporal Record detailed above, this Court finds that the duration of the stop lasted less than 20-25 minutes. Not only was the stop within a reasonable duration of time, the stop was not prolonged because Corporal Record was conducting further investigation while Trooper Brown was completing the original traffic stop. At the Motion to Suppress hearing, Defense counsel incorrectly claimed that Trooper Brown completed the traffic stop prior to calling Corporal Record. It is clear from the testimony of both officers that Trooper Brown called Corporal Record prior to finishing the traffic stop and was still completing the necessary traffic stop paperwork as Corporal Record interacted with the Defendant. Nothing was prolonged in this case; rather, two officers worked together to effectively handle both a valid traffic stop and conduct a brief investigation based upon reasonable articulable suspicion.

Looking to the Defendant's specific allegation that the canine sniff prolonged the stop, the Court finds this sentiment incorrect for two reasons. First, as noted in *Caballes*, a person is not entitled to Fourth Amendment protection from a dog sniff conducted during a traffic stop for contraband that is illegal to possess. *Id*. Here, Corporal Record could have had his dog sniff around the Defendant's vehicle without a Fourth Amendment violation occurring. Second, this issue is not even relevant because there was no canine sniff of the vehicle. Corporal Record did not have

7

the opportunity to have his dog sniff the vehicle because the Defendant and his passengers admitted to possession of narcotics on their own volition. While the dog did engage in a person sniff, that occurred after the discovery of the narcotics in the Defendant's vehicle. With that and all of the above, the traffic stop conducted by law enforcement was not unconstitutionally prolonged.

### III.    Stop and Frisk of Mr. Galati

#### a.  Protective Frisk

The Defendant argues that Corporal Record's search of his person was unconstitutional because the Corporal could not state a particularized belief that the Defendant was armed and dangerous.[1] This Court finds that the search of the Defendant was permissible because Corporal Record had probable cause. In *Terry v. Ohio*, the Supreme Court held that law enforcement may conduct a stop and frisk of a person's clothing, without a warrant, if the officer can articulate a reasonable belief that the suspect is armed and dangerous which poses a safety risk to the officer and the public. 392 U.S. at 30-31. However, probable cause to search can arise during an investigation or questioning of a person. *State v. Melvin*, 2008 ME 118, 955 A.2d 245; *see* Ferdico & Walton, *Maine Law Enforcement Officer's Manual* 1-8 (2013-2016 ed.) An officer has probable cause to conduct a search of a person if "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that [property subject to seizure under the law would be found in particular place, or on a particular person.]" *Carroll v. United States*, 267 U.S. 132, 162 (1925); *see* Ferdico & Walton, *Maine Law Enforcement Officer's Manual* 1-1 (2013-2016 ed.)

Here, this Court finds that Corporal Record did not violate the Defendant's Fourth Amendment rights by patting down his person because Corporal Record had probable cause to believe the Defendant possessed illegal contraband. The facts here are fairly simple: Corporal Record asked the Defendant to exit the vehicle, spent 3-5 minutes having a calm and non-aggressive conversation with the Defendant, and at the end of the conversation the Defendant voluntarily admitted that he had illegal prescription drugs in his possession. Following the law established in *Carroll*, Corporal Record gained information that led him to reasonably believe the Defendant had illegal narcotics from the Defendant's own admission, thus Corporal Record had

---

[1] This Court will not be addressing the pat down searches of the passengers in this matter.

probable cause to conduct a search. Therefore, regardless of whether Corporal Record did a pat down of the Defendant looking for weapons or for narcotics, he was permitted to engage in that search because he had probable cause to be believe a crime had occurred based on the statements of the Defendant himself. Thus, there was no violation of the Defendant's Fourth Amendment rights when Corporal Record did a pat down of his outer clothing.

### b. Search of the Trunk

The Defendant's challenge as to the admissibility of the evidence found in the trunk of his vehicle is incorrect because of the applicable automobile exception doctrine. Pursuant to *Carroll v. United States*,

> On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. 267 U.S. 132, 149 (1925).

The above rule, also known as the automobile exception, permits officers to search a vehicle if there is proper probable cause that there is contraband in the vehicle. As articulated above, Corporal Record had probable cause to believe illegal narcotics were in the vehicle based on the assertions made by the Defendant. Therefore, this Court agrees with the State that Corporal Record's actions are protected by the automobile exception because he had probable cause to open the trunk, locate the illegal narcotics, and the evidence obtained may be used against the Defendant under solidified Fourth Amendment doctrine.

### IV.    Fruits of the Poisonous Tree

The Defendant contends that all evidence found in the Defendant's car and any statements made by the Defendant should be excluded from evidence as fruits of the poisonous tree. Under the exclusionary rule, evidence that comes about from an unconstitutional search or seizure under the Fourth Amendment will not be admissible at trial against the Defendant. *Silverthrone Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). Here, because this Court finds that there have been no Fourth Amendment violations, the Defendant's fruits of a poisonous tree argument is moot. Thus, the State may use any evidence or statements that came about from this constitutionally valid traffic stop.

## CONCLUSION

Accordingly, based on the above findings, it is hereby **ORDERED** that Defendant's Motion to Suppress is **DENIED**.

DATED: September 28, 2018

_____
Judge Eric J. Walker,
Maine District Court

Entered on the docket 9-28-18

CR-18-20348

10

STATE OF MAINE
  v.
STEVEN  GALATI
41 MONROE ROAD
SEARSPORT ME 04974

MUR/SC# 321-18

CRIMINAL DOCKET
KENNEBEC, ss.
Docket No  KENCD-CR-2018-20348

**DOCKET RECORD**

9/28/18

DOB: 04/25/1968
Attorney: HARRIS MATTSON
      SILVERSTEIN LAW
      21 MAIN ST SUITE 202
      BANGOR ME 04401
      APPOINTED 06/28/2018

State's Attorney: MAEGHAN MALONEY

Filing Document: CRIMINAL COMPLAINT
Filing Date: 04/11/2018

Major Case Type: MISDEMEANOR (CLASS D,E)

## Charge(s)

1   **UNLAWFUL POSSESSION OF SCHEDULED DRUG**   **02/06/2018 SIDNEY**
Seq 8571  17-A  1107-A(1)(C)      Class D
   RECORD         / MSP

2   **UNLAWFUL POSSESSION OF SCHEDULED DRUG**   **02/06/2018 SIDNEY**
Seq 8574  17-A  1107-A(1)(F)      Class E
   RECORD         / MSP

## Docket Events:

04/11/2018 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 04/11/2018

04/11/2018 Charge(s): 1,2
      HEARING -  ARRAIGNMENT SCHEDULE OTHER COURT ON 04/17/2018 at 01:00 p.m.

      WATDC
04/18/2018 Charge(s): 1,2
      HEARING -  ARRAIGNMENT FTA ON 04/17/2018

04/18/2018 BAIL BOND - $400.00 CASH BAIL BOND SET BY COURT ON 04/17/2018
      VALERIE  STANFILL , JUDGE
      NO THIRD PARTY BAIL, BAIL FOR WATERVILLE DC
04/18/2018 WARRANT - $400.00 FOR FAILURE TO APPEAR ORDERED ON 04/18/2018
      VALERIE  STANFILL , JUDGE
      NO THIRD PARTY BAIL, BAIL FOR WATERVILLE DC
04/18/2018 WARRANT - $400.00 FOR FAILURE TO APPEAR ISSUED ON 04/18/2018

      NO THIRD PARTY BAIL, BAIL FOR WATERVILLE DC
06/05/2018 MOTION -  MOTION TO TRANSFER FILED BY DEFENDANT ON 06/04/2018

      AGREED UPON MOTION TO TRANSFER THIS CASE TO WALDO FOR GLOBAL RESOLUTION
06/05/2018 MOTION -  MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 06/04/2018

      MOTION TO ENLARGE TIME TO FILE PRETRIAL MOTIONS.
06/14/2018 MOTION -  MOTION FOR ENLARGEMENT OF TIME GRANTED ON 06/14/2018
      ROBERT E MURRAY JR, JUSTICE
      COPY TO PARTIES/COUNSEL

06/14/2018 MOTION - MOTION TO TRANSFER GRANTED ON 06/14/2018
        ROBERT E MURRAY JR, JUSTICE
        COPY TO PARTIES/COUNSEL                                TO WALDO COUNTY
        COURTS
06/14/2018 Charge(s): 1,2
        TRANSFER - TEMPORARY TRANSFER REQUESTED ON 06/04/2018


06/14/2018 Charge(s): 1,2
        TRANSFER - TEMPORARY TRANSFER GRANTED ON 06/14/2018
        ROBERT E MURRAY JR, JUSTICE
06/14/2018 Charge(s): 1,2
        TRANSFER - TEMPORARY TRANSFER TRANSFERRED ON 06/14/2018


        WALCD
06/15/2018 Charge(s): 1,2
        TRANSFER - TEMPORARY TRANSFER RECVD BY COURT ON 06/15/2018


06/27/2018 Charge(s): 1,2
        TRANSFER - TEMPORARY TRANSFER RETURN TO ORIG COURT ON 06/25/2018
        ROBERT E MURRAY JR, JUSTICE
        A GLOBAL RESOLUTION WAS NOT REACHED WITH THIS CASE AND OTHERS, AND        ACCORDINGLY,
        THE CASE IS BEING TRANSFERRED BACK TO KENNEBEC COUNTY FOR     FURTHER PROCEEDINGS.
06/27/2018 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 06/25/2018


        MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
06/28/2018 Party(s): STEVEN GALATI
        ATTORNEY - APPOINTED ORDERED ON 06/28/2018


        Attorney: HARRIS MATTSON
06/28/2018 Charge(s): 1,2
        HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 07/19/2018 at 08:30 a.m. in Room No.  1


        SCHEDULED ON A MISC DAY BECAUSE THERE ARE OTHER CASES IN OTHER COURTS AND MANY MOVING
        PARTS
06/28/2018 Charge(s): 1,2
        HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ELECTRONICALLY ON 06/28/2018


06/28/2018 WRIT - HABEAS CORPUS TO PROSECUTE ISSUED ON 06/28/2018


        CERTIFIED COPY TO SHERIFF DEPT.
06/28/2018 Charge(s): 1,2
        TRANSFER - UCD CS FILE TRANS TO RESP CRT RECVD BY COURT ON 06/28/2018


        AUGSC
06/29/2018 WRIT - HABEAS CORPUS TO PROSECUTE ORDERED ON 06/29/2018
        WILLIAM STOKES , JUSTICE
07/16/2018 Charge(s): 1,2
        MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 07/13/2018


07/17/2018 Charge(s): 1,2
        MOTION - MOTION TO CONTINUE GRANTED ON 07/16/2018
        WILLIAM STOKES , JUSTICE
        COPY TO PARTIES/COUNSEL

07/17/2018 Charge(s): 1,2
           HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 08/06/2018 at 10:00 a.m. in Room No.   3


07/17/2018 Charge(s): 1,2
           HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ELECTRONICALLY ON 07/17/2018


07/17/2018 WRIT - HABEAS CORPUS TO PROSECUTE ISSUED ON 07/17/2018


           CERTIFIED COPY TO SHERIFF DEPT.
07/17/2018 WRIT - HABEAS CORPUS TO PROSECUTE ORDERED ON 07/17/2018
           ERIC  WALKER , JUDGE
07/18/2018 Charge(s): 1,2
           HEARING - DISPOSITIONAL CONFERENCE CONTINUED ON 07/18/2018


07/20/2018 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 07/20/2018


           Attorney: HARRIS MATTSON
07/30/2018 MOTION - MOTION TO CONTINUE GRANTED ON 07/26/2018
           ERIC  WALKER , JUDGE
           COPY TO PARTIES/COUNSEL
07/30/2018 WRIT - HABEAS CORPUS TO PROSECUTE VACATED ON 07/30/2018


07/30/2018 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 08/23/2018 at 10:00 a.m. in Room No.   1


           NOTICE  TO PARTIES/COUNSEL
07/30/2018 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 07/30/2018


07/30/2018 WRIT - HABEAS CORPUS TO PROSECUTE ISSUED ON 07/30/2018


           CERTIFIED COPY TO SHERIFF DEPT.
07/30/2018 WRIT - HABEAS CORPUS TO PROSECUTE ORDERED ON 07/30/2018
           THOMAS  NALE , JUDGE
07/31/2018 Charge(s): 1,2
           HEARING - DISPOSITIONAL CONFERENCE CONTINUED ON 07/16/2018
           WILLIAM  STOKES , JUSTICE
08/10/2018 MOTION - MOTION TO CONTINUE FILED BY STATE ON 08/10/2018


           DA:  ALISA ROSS
           DEFENSE DOES NOT OBJECT. MOTION TO CONTINUE MOTION TO SUPPRESS HEARING.
08/14/2018 MOTION - MOTION TO CONTINUE GRANTED ON 08/10/2018
           WILLIAM  STOKES , JUSTICE
           COPY TO PARTIES/COUNSEL
08/14/2018 HEARING - MOTION TO SUPPRESS CONTINUED ON 08/10/2018
           WILLIAM  STOKES , JUSTICE
           DA:  ALISA ROSS
08/14/2018 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 09/20/2018 at 10:00 a.m. in Room No.   1


           NOTICE  TO PARTIES/COUNSEL
08/14/2018 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 08/14/2018


09/18/2018 WRIT - HABEAS CORPUS TO PROSECUTE ISSUED ON 09/18/2018


           CERTIFIED COPY TO SHERIFF DEPT.

09/20/2018 WARRANT -  FOR FAILURE TO APPEAR RECALLED ON 09/20/2018
            ERIC  WALKER , JUDGE
09/20/2018 WARRANT -  FOR FAILURE TO APPEAR CANCEL ACKNOWLEDGED ON 09/20/2018 at 11:41 a.m.

09/20/2018 HEARING -  MOTION TO SUPPRESS HELD ON 09/20/2018
            ERIC  WALKER , JUDGE
            Attorney:  HARRIS MATTSON
            DA:  MICHAEL MADIGAN
            Defendant Present in Court
09/20/2018 Charge(s): 1,2
            HEARING -  ARRAIGNMENT HELD ON 09/20/2018
            ERIC  WALKER , JUDGE
            Defendant Present in Court

            DEFENDANT INFORMED OF CHARGES.
09/20/2018 Charge(s): 1,2
            PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 09/20/2018

09/28/2018 MOTION -  MOTION TO SUPPRESS DENIED ON 09/28/2018
            ERIC  WALKER , JUDGE
            COPY TO PARTIES/COUNSEL
09/28/2018 ORDER -  COURT ORDER FILED ON 09/28/2018
            ERIC  WALKER , JUDGE
            ORDER ON MOTION TO SUPPRESS                                     IT IS HEREBY
            ORDERED THAT DEFENDANT'S MOTION TO SUPPRESS IS DENIED.
                                            COPY TO ATTY MATTSON AND DA'S OFFICE
                                    COPY TO REPOSITORIES
09/28/2018 ORDER -  COURT ORDER ENTERED ON 09/28/2018

09/28/2018 WRIT -  HABEAS CORPUS TO PROSECUTE REMANDED ON 09/20/2018
            ERIC  WALKER , JUDGE

A TRUE COPY
ATTEST: _____
                    Clerk