STATE OF MAINE
KENNEBEC, SS.

UNIFIED CRIMINAL DOCKET
AUGUSTA
DOCKET NO. CR-20-1445


STATE OF MAINE

V.

**DECISION ON MOTION TO SUPPRESS**

ROGER OUELLETTE

## INTRODUCTION

The matter before the court is the Defendant's Motion to Suppress dated August 19, 2020. The Defendant (Roger Ouellette) seeks to suppress all evidence following his detention, in his driveway, by Maine State Police Trooper (now Detective) James Moore on February 1, 2020 in Litchfield. Mr. Ouellette challenges the actions of Det. Moore on the basis that the officer lacked reasonable, articulable suspicion to make a stop of him.

A testimonial hearing was held on June 29, 2021, at which both Det. Moore and Mr. Ouellette testified. State's Exhibit 1 and Defendant's Exhibit 1 were admitted into evidence without objection. Briefing on the motion was completed on July 16, 2021.

Based upon the evidence presented at the hearing, the court makes the following findings of fact.

## FACTS

During the evening of February 1, 2020, then Trooper Moore was on patrol along Route 126 in Litchfield, otherwise known as the Lewiston Road. He was traveling west in his marked cruiser. He was "deliberately" on patrol in that area (the Tacoma Lakes region) looking to "pick off" possible impaired drivers who had frequented a local restaurant located on Route 126 that, the trooper had heard, was

"overserving" alcohol to its patrons. As he was heading west in the direction of the restaurant, the trooper observed a vehicle coming towards him, and further observed that the vehicle had crossed over the double yellow center line and was partially in his lane. Specifically, the trooper recalled that the tire on the vehicle was over the center line such that the trooper moved over in his lane. The trooper testified that that this was a violation of 29-A M.R.S. § 2051(1).[1]

Trooper Moore did not immediately reverse direction and stop the vehicle for this alleged violation. After losing sight of the lights on the vehicle, the trooper "flipped around" and followed, regaining visual observation of the vehicle after about 20-30 seconds, he estimated. Trooper Moore saw Mr. Ouellette's vehicle, with its brake lights still on,[2] parked near a building, which the trooper believed was a home, a short distance away on Route 126. Trooper Moore testified that he was "pretty positive" and had "no doubt" that Mr. Ouellette's vehicle was the same vehicle that had earlier crossed over into his lane.

Trooper Moore pulled over and waited for approximately 4-5 minutes because he wanted to see more of the vehicle in operation. The trooper then headed east on Route 126, past where Mr. Ouellette's vehicle was parked, and proceeded to the Huntington Hill Road, where he parked for about 10 minutes, waiting to see of the vehicle moved. After that, Trooper Moore headed back west, again passing the location where Mr. Ouellette's vehicle was still parked, with its lights on. After passing the Defendant's vehicle, Trooper Moore turned around again and watched some more. At some point, the Defendant's vehicle began to move. According to

---

[1] Title 29-A M.R.S. § 2051(1) provides that "[w]hen a public way has been divided into 2 or more clearly marked lanes for traffic . . . [a] vehicle must be operated as nearly as practicable entirely within a single lane." A violation of section 2015 is a traffic infraction. 29-A M.R.S. §§ 101(85), 103 and 104.

[2] There may be some dispute or confusion in the record as to whether Trooper Moore saw the brake lights on the vehicle or the head lights. Nevertheless, there is no dispute that Mr. Ouellette's vehicle was parked by the building along Route 126.

Trooper Moore, the vehicle quickly crossed over Route 126 and entered Sand Pond Lane, which was across the street from where the vehicle had been parked. Sand Pond Lane was described as an icy, camp road. Trooper Moore testified that Mr. Ouellette's vehicle was traveling faster than he felt comfortable with, under the conditions, but he could not say how fast the vehicle was going. When the Defendant's vehicle left its location on Route 126 and crossed over to enter Sand Pond Lane, Trooper Moore followed with only his headlights on. The trooper could see the Defendant's vehicle turn into a driveway and saw the driver's side door of the vehicle open and the driver slip on the icy surface.[3] As Trooper Moore turned into the driveway, he activated his blue lights and cruiser camera. At that point, he approached Mr. Ouellette in the driveway and questioned him.

Trooper Moore acknowledged that, "in his mind," he and the Defendant were essentially playing a game of "cat and mouse." For example, Trooper Moore did not immediately reverse direction and follow the vehicle that had crossed into his lane because the road was quite narrow, but also because the trooper did not want to signal the driver that he was being followed by law enforcement. At least in part, that was why Trooper Moore waited until he lost sight of the vehicle's rear lights before he turned around to follow the vehicle and catch up.

Moreover, based on his experience as a patrol trooper for 8 years, Trooper Moore suspected that the driver of the vehicle was attempting to avoid him by pulling into the home and parking with the vehicle's brake lights on. Trooper Moore assumed that the driver did not live at that location, which further raised his suspicions. It was only later that Trooper Moore learned that Mr. Ouellette owned the property on Route 126, as well as the property on Sand Pond Lane. Also suspicious in Trooper Moore's mind was the way Mr. Ouellette crossed Route 126

---

[3] The cruiser camera does not show the door opening or the slip on the ice, but Trooper Moore testified that he could see more through the trees than is recorded on the cruiser camera.

and entered Sand Pond Lane, as he found the speed on an icy, camp road out of the ordinary.

Trooper Moore acknowledged that he could have immediately stopped the vehicle that had crossed the center line, but he chose not to because he wanted to further investigate as to whether the operator of that vehicle was impaired. That was the primary focus of Trooper Moore's patrol that night. By the time Trooper Moore began to follow Mr. Ouellette onto Sand Pond Lane, if not earlier, he believed he was engaged in an OUI investigation.

Mr. Ouellette testified and introduced three short video clips to illustrate where his vehicle was parked, the general area along Route 126, up to Huntington Hill Road and what could or could not be seen through the heavily tinted windows on the vehicle, a GMC ¾ ton truck.

## DISCUSSION

Mr. Ouellette contends that Trooper Moore effectuated a stop of him from the point in time when the blue lights on the officer's cruiser were activated, and that the stop was illegal because it was not supported by objectively reasonable and articulable suspicion. Specifically, Mr. Ouellette maintains that Trooper Moore: (1) did not have reasonable, articulable suspicion to believe that the Defendant was operating under the influence; (2) did not have reasonable, articulable suspicion to believe that he had committed a traffic infraction by violating 29-A M.R.S. § 2051(1), and; (3) in the absence of reasonable, articulable suspicion, the gravity of the public interest did not outweigh the severity of the interference with the Defendant's individual liberty, such as to justify the stop.

The Law Court has recently reaffirmed that "[a] stop is justified when an officer's assessment of the existence of specific and articulable facts indicating a possible violation of law or a public safety risk is objectively reasonable considering the totality of the circumstances." *State v. Simmons,* 2016 ME ME 91, ¶ 9, *quoting*

4

*State v. Connor,* 2009 ME 91, ¶ 10, 977 A.2d 1003. "[T]he threshold for demonstrating an objectively reasonable suspicion necessary to justify a vehicle stop is low . . . . The suspicion need only be more than a speculation or an unsubstantiated hunch." *State v. LaForge,* 2012 ME 65, ¶ 10, 43 A.3d 961. "Safety reasons alone can be sufficient if they are based upon 'specific and articulable facts'" *State v. Pinkham,* 565 A.2d 318, 319 (Me. 1989). *See State v. Fuller,* 556 A.2d 224 (Me. 1989) (blinking headlights which officer believed were possibly defective justified stop).

From the court's perspective, this motion to suppress can be resolved by addressing the question of whether Trooper Moore had an objectively reasonable, articulable suspicion to believe that the Defendant had violated 29-A M.R.S. § 2051(1). The court concludes that he did.

In the court's view, Trooper Moore clearly had an objectively reasonable, articulable belief that the Defendant had crossed the center line and traveled in his lane in violation of the statute. Trooper Moore testified that he could see pavement between the tire and the double yellow line as the vehicle approached him, and that it was enough for him to move over in his own lane. Mr. Ouellette argues that the road conditions on Route 126 might explain why the vehicle strayed into the oncoming lane. *Def's Memo at 8.* But the trooper testified that Route 126 was not icy, although Sand Pond Lane was.

Mr. Ouellette also argues that Trooper Moore had insufficient evidence to conclude that it was his vehicle that crossed the yellow lines in violation of section 2051(1). It is true that Trooper Moore lost sight of the vehicle he had encountered on Route 126 for a brief period of time. Nevertheless, the trooper also said he was "pretty positive" and had "no doubt" that the vehicle (Mr. Ouellette's) he saw parked at the building on Route 126, and the vehicle he had earlier encountered on that road, were one and the same. In short, the evidence was sufficient to show that Trooper

5

Moore had an objectively reasonable, articulable suspicion that Mr. Ouellette had violated 29-A M.R.S. § 2051(1). The commission of a traffic infraction in his presence constituted an objectively reasonable and articulable suspicion to justify a stop of the Defendant.

This case is unlike *State v. Caron*, 534 A.2d 978 (Me. 1978), where the Court held that suspicion "based solely on the single, brief straddling of the center line of the undivided highway, with no oncoming traffic in sight . . . [and] not constituting a violation of any traffic law," was not sufficient to amount to objectively reasonable and articulable suspicion to make a stop. *Caron* itself, as well as subsequent cases, made it clear that the absence of any traffic was a key component of its holding. *Id.* at 979. *See also State v. Simmons*, 2016 ME 49, ¶¶ 10-12, 135 A.3d 824; *State v. Dulac*, 600 A.2d 1121, 1123 (Me. 1992). Here, Trooper Moore was approaching the Defendant's vehicle when it left its lane of travel and moved into his. Unlike *Caron*, there was an arguable violation of 29-A M.R.S. § 2051(1).

Finally, the fact that Trooper Moore decided not to make an immediate stop, but waited to see if he could make further observations of the vehicle in operation that might support an OUI investigation, did not somehow eliminate or vitiate the objectively reasonable and articulable suspicion Trooper Moore had based on the section 2051(1) violation. Spending 20 minutes to see if further evidence of erratic operation might take place, was not objectively unreasonable under all the circumstances, and Trooper Moore's stop of Mr. Ouellette was lawful based on the perceived violation of section 2051(1).

In light of this conclusion, it is not necessary for the court to decide whether Trooper Moore also had an objectively reasonable and articulable suspicion that Mr. Ouellette was operating under the influence. Nor does the court need to address whether the gravity of the public interest outweighs the severity of the intrusion on the Defendant's personal liberty, since the court has already found that Trooper

6

Moore had an objectively reasonable, articulable suspicion to stop the Defendant for a traffic infraction.

## CONCLUSION

The entry is:

The Defendant's Motion to Suppress is DENIED.

Dated:     September 7, 2021

William R. Stokes
Justice, Superior Court

vs
ROGER  OUELLETTE
1747 LEWISTON ROAD
LITCHFIELD ME 04350

**DOCKET RECORD**

DOB: 10/25/1964

Attorney:      WILLIAM BLY                                    State's Attorney:      MAEGHAN MALONEY
               LAW OFFICE OF WILLIAM T BLY
               50 ADAMS STREET
Pro Se.        PO BOX 1871
               BIDDEFORD ME 04005
               RETAINED 08/11/2020

Filing Document:      CRIMINAL COMPLAINT                     Major Case Type:  MISDEMEANOR (CLASS D,E)
Filing Date:          08/11/2020

**Charge(s)**

1    OUI (ALCOHOL)                                           02/01/2020      LITCHFIELD
Seq 12942          29-A   2411(1-A)(A)            Class D

**Docket Events:**

08/11/2020  FILING DOCUMENT - CRIMINAL COMPLAINT FILED ON 08/11/2020

08/11/2020  Charge(s):  1
            HEARING -  ARRAIGNMENT SCHEDULED FOR 04/06/2020 at 08:30 a.m. in Room No.  1

08/11/2020  Charge(s):  1
            HEARING -  ARRAIGNMENT WAIVED ON 08/11/2020

08/11/2020  Party(s):    ROGER OUELLETTE
            ATTORNEY -  RETAINED ENTERED ON 08/11/2020

            Attorney: WILLIAM BLY
08/11/2020  Charge(s):  1
            HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 08/18/2020 at 11:45 a.m. in Room No.  1

08/11/2020  Charge(s):  1
            HEARING -  DISPOSITIONAL CONFERENCE NOTICE SENT ELECTRONICALLY ON 08/11/2020

08/11/2020  Charge(s):  1
            PLEA -  NOT GUILTY ENTERED BY COUNSEL ON 08/11/2020

08/18/2020  Charge(s):  1
            HEARING -  DISPOSITIONAL CONFERENCE HELD ON 08/18/2020
            WILLIAM  STOKES , JUSTICE
08/18/2020  Charge(s):  1
            HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 09/22/2020 at 09:20 a.m. in Room No.  1

08/18/2020  Charge(s):  1
            HEARING -  DISPOSITIONAL CONFERENCE NOTICE SENT ELECTRONICALLY ON 08/18/2020

08/24/2020  MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 08/21/2020

            Attorney: NATHANIEL HITCHCOCK
            FILED OBO WILLIAM T BLY #9776
08/24/2020  HEARING - MOTION TO SUPPRESS SCHEDULED FOR 09/24/2020 at 09:15 a.m. in Room No.  1

NOTICE TO PARTIES/COUNSEL
08/24/2020 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 08/24/2020

09/21/2020 Charge(s): 1
MOTION - MOTION TO CONTINUE FILED BY STATE ON 09/21/2020

DA: THOMAS FISHER
09/22/2020 Charge(s): 1
HEARING - DISPOSITIONAL CONFERENCE HELD ON 09/22/2020
M MICHAELA MURPHY , JUSTICE
Attorney: NATHANIEL HITCHCOCK
DA: MICHAEL MADIGAN
09/22/2020 Charge(s): 1
HEARING - MOTION TO SUPPRESS SCHEDULED FOR 10/16/2020 at 11:00 a.m. in Room No. 2

NOTICE TO PARTIES/COUNSEL                         1 HOUR
09/22/2020 Charge(s): 1
HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 09/22/2020

09/23/2020 HEARING - MOTION TO SUPPRESS CONTINUED ON 09/22/2020

09/23/2020 Charge(s): 1
MOTION - MOTION TO CONTINUE GRANTED ON 09/22/2020
M MICHAELA MURPHY , JUSTICE
COPY TO PARTIES/COUNSEL
10/16/2020 Charge(s): 1
HEARING - MOTION TO SUPPRESS NOT HELD ON 10/16/2020

NOT ENOUGH TIME; RESCHEDULE
10/19/2020 CASE STATUS - CASE FILE LOCATION ON 10/19/2020

W/ JESS T - NEED DAY TO SCHEDULE MOTION TO SUPPRESS HEARING 1 HR
11/09/2020 CASE STATUS - CASE FILE RETURNED ON 11/09/2020

11/09/2020 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 12/07/2020 at 08:30 a.m. in Room No. 3

NOTICE TO PARTIES/COUNSEL                         ONE HOUR W/ STOKES
11/09/2020 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 11/09/2020

12/14/2020 MOTION - OTHER MOTION FILED BY DEFENDANT ON 12/14/2020

TO SET MTSUPPRESS IN FRONT OF J. STOKES
12/14/2020 HEARING - MOTION TO SUPPRESS CONTINUED ON 12/07/2020

COVID RESCHEDULING
04/06/2021 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 05/07/2021 at 08:30 a.m. in Room No. 2

NOTICE TO PARTIES/COUNSEL                                              SPECIALLY SET
WITH JUSTICE STOKES
04/06/2021 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 04/06/2021

04/22/2021 Charge(s): 1

MOTION - OTHER MOTION FILED BY DEFENDANT ON 04/22/2021

TO APPEAR IN PERSON FOR MT SUPPRESS
04/22/2021 OTHER FILING - NTS OF EMAIL FILING/RESP DEADL FILED ON 04/22/2021

05/04/2021 Charge(s): 1
MOTION - OTHER MOTION UNDER ADVISEMENT ON 04/23/2021
WILLIAM STOKES , JUSTICE
TO APPEAR IN PERSON FOR MT SUPPRESS                                         NEED
MORE INFO
05/04/2021 Charge(s): 1
MOTION - OTHER MOTION GRANTED ON 05/03/2021
M MICHAELA MURPHY , JUSTICE
TO APPEAR IN PERSON FOR MT SUPPRESS
                                    AFTER TELEPHONE CONFERENCE- GRANTED TWO HOURS
05/04/2021 HEARING - MOTION TO SUPPRESS CONTINUED ON 05/04/2021

PER J. MURPHY SET IN LATE MAY OR JUNE
05/12/2021 Charge(s): 1
HEARING - MOTION TO SUPPRESS SCHEDULED FOR 05/26/2021 at 01:00 p.m. in Room No. 3

NOTICE TO PARTIES/COUNSEL
05/12/2021 Charge(s): 1
HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 05/12/2021

05/19/2021 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 05/14/2021

05/21/2021 Charge(s): 1
HEARING - MOTION TO SUPPRESS CONTINUED ON 05/20/2021

05/27/2021 MOTION - MOTION TO CONTINUE GRANTED ON 05/20/2021
BRENT DAVIS , JUDGE
COPY TO PARTIES/COUNSEL
05/27/2021 MOTION - OTHER MOTION GRANTED ON 05/20/2021
BRENT DAVIS , JUDGE
TO SET MTSUPPRESS IN FRONT OF J. STOKES
06/02/2021 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 06/29/2021 at 02:30 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL                              IN PERSON
06/02/2021 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 06/02/2021

06/04/2021 Charge(s): 1
OTHER FILING - OTHER DOCUMENT FILED ON 06/04/2021

LETTER FROM DEFENDANT STATING THE DURATION OF TIME FOR THE SUPRESS HEARING
06/04/2021 Charge(s): 1
OTHER FILING - NTS OF EMAIL FILING/RESP DEADL FILED ON 06/04/2021

LETTER TO CLERK RE ESTIMATED TIME FOR MOTIONTO SUPRESS HEARING
07/07/2021 HEARING - MOTION TO SUPPRESS HELD ON 06/29/2021
WILLIAM STOKES , JUSTICE
Attorney: WILLIAM BLY

DA: THOMAS FISHER
Defendant Present in Court
PARTIES TO FILE BRIEFS BY 7/16/21
07/07/2021 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 06/29/2021
WILLIAM STOKES , JUSTICE
ON ANGIE'S DESK
07/14/2021 NOTE - OTHER CASE NOTE ENTERED ON 06/29/2021

PARTIES TO FILE BRIEFS BY 7/16/21
07/19/2021 OTHER FILING - OTHER DOCUMENT FILED ON 07/16/2021

DA: FRAYLA SCHOENFELD TARPINIAN
STATE'S ARGUMENT ON DEFENDANT'S MOTION TO SUPPRESS.
07/23/2021 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 07/20/2021

Attorney: WILLIAM BLY
WITH ARGUMENT
09/08/2021 MOTION - MOTION TO SUPPRESS DENIED ON 09/07/2021
WILLIAM STOKES , JUSTICE
COPY TO PARTIES/COUNSEL
09/08/2021 ORDER - COURT ORDER FILED ON 09/07/2021
WILLIAM STOKES , JUSTICE
DECISION ON MOTION TO SUPPRESS

A TRUE COPY
ATTEST: _____
Clerk